I stand to review this case. It is simple. It is a no-go review with all reasonable inferences drawn in favor of Parcel 49C. The decision below will be the government's brief, primarily based on the issue of unilateral mistake, which is where I will concentrate most of my remarks. The decision below, if upheld, will turn the law of contracts on its head and allow any contractor required to avoid contractual obligations based on any innocent omission. The alleged mistake provided by the Board is not the unwitting mistake of an innocent party, but rather an intentional act by an expert agency engaged in a calculating plan to obtain money from Parcel 49C, i.e., lower taxes. Mr. Conway, before we get into the mistake problem, I'm curious about something that I appreciate your helping me understand. I'm a little slow on some of this. Whenever he starts that way, you're in trouble. Let's talk a little bit about what we understand to be the base year for this lease. I take it you and the government are arguing whether it's 2000 or 2003. Do I have that? Well, that was an issue relied upon by the court below. We don't think that's, in our case, we don't think that's a particularly relevant issue for the issues before this court. Well, explain to me why the base year is not particularly relevant. Because Section 19 of the lease lays out how to raise and lower taxes. The government came to us with a proposal to say that the year 2000 should be the base year, and we simply concurred in that, and we concurred in the calculations. That was an unambiguous agreement. That agreement amended the lease. For purposes of this appeal, we argue that the year 2000 was the base year based on that agreement. Secondly, Your Honor. I want to come back to that, but tell me secondly. Secondly, we would cite to the emails of the GSA chief appraiser, Mr. Cain, which we'll find it, I believe, at JA30. I want to come back to that, too, but go ahead. Well, Mr. Cain, in his emails, indicates that, in fact, the year 2000 could be a false assessment, and that's why he doesn't like the tax clause in his email on the 106. All right, look, let's do this. It's clearly important, isn't it, as to whether the base year is 2000 or 2003? Isn't that what the litigation is really about? I don't believe it's about that, Your Honor. I believe it's about an agreement that the party signed, whether GSA was mistaken, and whether we made a misrepresentation. Well, if you don't have an agreement on 2000, then it's going to be 2003, right? Well, I believe we do have an agreement on 2003. Yeah, I understand that, but if you don't, if you lose on that point, then they win that it's 2003. Well, I don't concede that. I'm saying if you lose that, then it's 2003. Is that correct? I don't agree, Your Honor. Well, what do you think it is if you lose on whether it's 2000? I'd have to go back for fact-finding on that, because there were no facts found in this case on that issue. Oh, all right. The facts that I'm puzzling about, and this is kind of, I don't want to distract you totally, but just mostly, why isn't 1998 the base year? 1998 is the base year because the contract was signed in 1994, the contract was effective in 1997, the building was completed in 1998, GSA moved in in 1997 and 1998. Why isn't 1998 the base year for purposes of the tax adjustment? That's my question. It's a simple question. Well, in our view, it could be the base year. That's not what the parties agreed to in the SLAs. Because we've got to find a full assessment first, right? I'm sorry, Your Honor? We've got to have a full assessment first, right? Yes, which is why we picked the year 2000. Well, wait a minute. In 1998, you had a full assessment. We had essentially a full assessment in 1998. Ah, okay. Not quite full, Your Honor. Well, however, look at what the contract says. The government shall pay additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences, Aaron, base year. In fact, the lease commenced in 1997. Correct. So that should be your base year under that sentence. However, the further sentence says, if no full tax assessment is made during the calendar year in which the government lease commences, 1997. I'm reading, in case you're not familiar with the provision, from Section 19A. I'm very familiar with that. I'm sure you are. If no full tax assessment is made during the calendar year in which the government lease commences, i.e., 1997, the base year will be the first year of a full assessment. The base year of a full assessment is not defined what a full assessment is. But a full assessment, according to our cases, is when the improvements are included in the assessment. What year were the improvements included in the assessment? There's no evidence in the record on that point, Your Honor. Oh, I think there is. If you turn to the email on page 30 of the appendix, you have an email from Richard Kane, GSA, which is the government side. So I think that's an admission against their interest. The property must be fully assessed as it is finished at the time it is assessed, even if the building is not yet completed. This value of $60 million was based on a full assessment as the property was finished at the time it was assessed. According to the D.C. Assessor's Office, the assessed value of $60 million was based on a stipulation between the owner of the property and the D.C. Finance Office. The property's value at that assessment time was $60 million. That stipulation was in 1998, the first full year for which there was a full assessment by agreement. Because, in fact, the D.C. Assessor had tried to assess it in 1998. You contested that assessment, and you all stipulated that the amount would be $60 million. That is correct, Your Honor. Isn't that a full assessment? That is a full assessment. So 1998 is actually the base year for tax adjustment. We would agree with that, Your Honor. Mr. Kane supports that. Then why are you all here saying it's other years? Because GSA writes a letter to us saying they'd like to make it the year 2000. We had no problem with the year 2000 because the assessment in 2000 was the same. So you took a tactically strategic position and agreed with their 2000 letter? We simply concurred with their letter. It wasn't incorrect. Their letter was not incorrect. So what is this mistake argument? Well, I leave that to the government to raise because we don't think it's a mistake. We argue in our briefs strenuously. There's no mistake here. We say there's no mistake. We say that GSA knew what it was doing. The record is clear that what happened in this case was that GSA wanted to get the money from parcel 49c for tax refund, and that's why they pushed this information out. And the record is further clear that Mr. Reed, the contracting officer, after he sent one of his people to the D.C. Assessor's office to figure out what the taxes were and what the assessment was, and he got both information, he then called over to figure out why there was a big difference between $60 million and $166 million. We know all that from the record, but my point, I guess, is, didn't you lead them into error by agreeing to the year 2000? Absolutely not. The year 2000 and the year 1998 are exactly the same. Where's the error, Judge? Why didn't you say 1998? Because there's no difference. They said 2000, we said that's fine. There's no difference whatsoever between 2000 and 1998. It makes not one bit of difference. No, that's right. It's the same assessment. Exactly right. It doesn't make one bit of difference. So as a simple matter, you said, okay, we'll buy 2000. That's what you guys want? Well, it doesn't make any difference because it's the same number for us. As this Court is aware, this is the second time we've been up to this circuit from Judge Rader on this case. Yep.  It's been very contentious on all parties. We've simply tried to be accommodating. The only evidence to the record as to what we did on this is JA29, this one letter, Your Honor, they said make it 2000. It didn't matter to us because it didn't make one change from 1998. We said fine. So your argument is it was perfectly reasonable for you to simply say, okay, you want 2000, make it 2000. It's the same number as far as we're concerned. It made no difference. Exactly right. We could have gone back and said, no, no, it should be 1998. Well, Mr. Conway, we have to deal, unfortunately, not with our independent reading of the record, but the assessment of the board, which we're actually reviewing, and the board finds until 2003, and this is a fact binding on us unless you can show us clear error, Partial 49C had not submitted to GSA any tax bills for the property. They go on to say that for that reason, they're going to recognize 2003 as the first year of a full assessment, tax year 2003, and that's justified, they say in their last sentence. Can you help us with what we're reviewing, the board's opinion? Yes, this is a case on summer judges below. It's a de novo case to this circuit. The board's decision is reviewed de novo by the circuit, and all inferences are drawn in our favor as the non-moving party. This was an inference by the board below, not a fact finding. There was no fact finding here. So this is not a fact that I'm coming to the circuit to ask you to reverse. There was no fact finding of summer judges below. Well, they had a hearing. No, there was no hearing. Did Reid testify? In his deposition, yes. There was no hearing. There was no trial. The testimony we're giving to you is not a trial. Well, the boards always are going to work in the quicker proceeding mode. You know that. If you want a trial, you end up going to the Court of Federal Claims, don't you? That's the way things often work. No, it's not true, Your Honor. We've had many long trials before the board. In any event, the board was wrong in what you're talking about. You cited testimony or a portion of the board's decision where the board says the GSA did not know until 2003 what the tax records were. Therefore, essentially by the time that the mail letter came out, the GSA didn't know what the tax records were. Well, let's come back to what Judge Plager was looking at. He looked at something in the first paragraph, but if we look at the second paragraph of that same thing, it says according to the D.C. assessment office, the first year when the property was fully assessed with complete occupancy was in the tax year 2003. Not the standard under the clause, Your Honor. Not the standard under the clause. Which supports completely the statement found by the board. It does not. It does not. That is not the standard in Section 19. What Mr. Cain is talking about there is an assessment of the property with complete occupancy. That is not the standard in the Section 19 we just read. And, in fact, if one looks at Mr. Cain's email in JA 106, he goes on to say, I am not a big fan of your real estate tax clause for this very reason. It's somehow getting a low assessed value and then whacking GSA later due to a pass-through clause. Mr. Cain is talking about a different standard in the second paragraph. It's not the standard in the leash, Your Honor. The board here has said at the bottom of page 6, it's clear from the uncontested facts presented that the first tax year in which all contemplated improvements to the assessed property were included in the appraisal-based tax year was 2003. Your Honor, I'm into my rebuttal time. Please respond to Judge Hunt. There is no evidence in the record that the first time there was an assessment of all the improvements of 2003. There's no evidence whatsoever to that effect in the record. So you're saying this statement is just flat-out wrong. That's one statement that's flat-out wrong. The second statement... Well, I just found one thing in the record, this memo that Judge Plager had referred us to that said, according to the D.C. Assessment Office, the first year when the property was fully assessed was 2003. No. That's evidence, is it not? That's not what it says. The first year when the property was fully assessed with complete occupancy is 2003. If you look in the paragraph above, Your Honor, you'll see, as Judge Plager was indicating, that the value of $60,309,040 was based on a full assessment at the time the property was finished, at the time it was assessed. Well, they're saying fully assessed at two separate times. The Board has kind of resolved that problem, haven't they? I think the Board would resolve that in favor of 1998. I mean, this Court would resolve it in favor of 1998. The Board concluded, based on this... Are you asking us to find facts? I'm not asking you to find facts. This is a summary judgment case. The facts were agreed to. There were no findings of facts below. None. You have a de novo record, Your Honor. There was a stipulated set of facts below on summary judgment. The Board did not find facts, and there was no facts on the bottom of the law. I take it from your answer to Judge Lynn, since we are a court of errors, we don't make them, we correct them, that the statement, it is clear... No, we don't make them. It is clear from the uncontested facts presented by the parties at the first tax year in which all contemplated improvements to the assessed property were included in the appraisal, base was tax year 2003. Your argument, I take it, is that that statement is incorrect. That's correct. And the Board erred in that statement. That was an inference. You think there's no substantial evidence in the record to support that statement. The Board made no findings of fact on that. The Board was done with facts on summary judgment. It drew that inference from the record. There's no support in the record for that. It was an incorrect inference. In fact, if you look at Mr. Cain's email on JA30, you'll see that Mr. Cain himself says that the value was in a full assessment, $60,390,000 floor up, and that the assessment in 2003 was fully assessed with complete occupancy. Now, complete occupancy took place... Thank you, Mr. Conway. What we'll do is we'll give you 2 minutes of rebuttal time, and maybe we can see if the government can help us out here a little bit. Thank you. Would you give Mr. Dierberg 17 minutes if he should need to use them so that we've evened out the time on both sides? Mr. Dierberg. Thank you, Your Honor. May it please the Court. This Court should affirm the decision of the Board which appropriately found summary judgment in favor of the GSA. In order to understand why it was appropriate to grant summary judgment, I think it's important to see what Parcel 49C alleges was the case. Parcel 49C alleges there was an agreement. In this agreement, Parcel 49C gave $50,000 just over a little more than $50,000, and in exchange, Parcel 49C received $1.8 million both in cash, $59,000 in cash and $1.8 million in cash. That's the effect of changing the base year from 2003 as it is in the original lease, and we'll get to that to address Your Honor's question. But to change from 2003 to 2000, the effect of that is an increase in rent for each year thereafter of $1.8 million. And this is an established fact at the time that they entered into this, or that they didn't enter into this. How does that tell us what is the year of full assessment? Your Honor, what this tells us is it goes both to the issue of mistake and a proper interpretation of the exchange of correspondence and the SLS. Now, to address the question that Your Honor asked about could it be 1998, well, I'd point out first that there has never been an argument. We have never heard an argument, and you won't see it in their original brief or the reply brief, that the year is 1998. They've never contested that if you follow the original terms of the contract, that it is the year 2003 because this is the first year of full assessment. Well, they say 98, 99, 2000 was the same because it was the same stipulated assessment. Again, Your Honor, they have never argued that. And I would point out in the record, in addition to the document that's been referred to, there is ample support for the existence of the reason that it's not a full assessment. And this court has addressed this issue in Kimbrell, which is the full assessment is the year in which all of the improvements to the property have been completed. And what we have on page 114 of the joint appendix is the stipulation itself. Now, this is part of the, if not the entire error. The GSA wrote to Parcel 419C and asked whether or not the year 2000, to confirm that the year 2000 is the first year of full assessment. What they did not know about is this, the stipulation, page 114 of the joint appendix. The joint appendix, 114 stipulation, says, justification, subject property is a new construction that will not be completed until approximately September of 1998. Remind you, this is dated April 1998. The assessments are done in advance. So clearly, at this time, there was not a full assessment of the property. The building had not been completed at that time. And in fact, the GSA didn't even move into the building until June of 1999. And there is no dispute as to that. But the issue in Kimbrell is whether or not all of the improvements to the building have been, or to the facility, the property have been completed. And that's not the case in 1998. I think you may be reading Kimbrell a little broadly. I think what Kimbrell says is that all of the improvements have to be included in the assessment, not that the building has to be physically completed. One of the interesting questions in this case is what did the assessor know in December of 1997 in terms of, did he include in the 1998 assessment the value of the building? According to the GSA emails, apparently he did. He included the total value of the building, which is puzzling because the evidence seems to be that some part, maybe 1% or 2%, we have no idea, was yet to be completed sometime in 1998. I don't see anything in the record that really tells us the answer to that question. But nevertheless, let's focus on the issue as we properly must, which is did the board do anything that was arbitrary and capricious, right? And the question is whether it's arbitrary and capricious to come up with a base date that is different from what the contract calls for. Your Honor, two points here. One is that was never the intent of the parties in exchange of correspondence indicates both. It's very clear that the subjective intent of GSA was not to modify the lease. But also objectively, looking at the exchange of correspondence in the SLAs, that was not the intent. If you look at the letter from the GSA, the letter to GSA underlines Section 19 of the lease. It indicates its understanding that under Section 19 of the lease that it's the first year of full assessment. And their understanding, based on their information, was that it's the year 2000. I want to make it clear. Shouldn't GSA be held to that? No, Your Honor, and for a variety of reasons. It's important to note in this case that the mistake in question is a mistake about parcel 49C's taxes. This is not a mistake about some esoteric fact. This is a mistake about parcel 49C's taxes, which they're obligated to provide to the tax information. It's the responsibility of parcel 49C to provide this. And the GSA asked for this information. It was not provided. Even after the March 7th letter from the GSA, parcel 49C. We're on summary judgment here. And if anything smacks of a factual dispute, it seems to be the year of full assessment here. We've seen, with the excellent research of my colleagues, three or four different possible dates. How could that be resolved on summary judgment? Your Honor, there has never been, again, a dispute prior to this time about whether or not, under the court's decision in Kimball, whether that base year would be 2003. And I think if you look at the... Let me direct you to the same point I made with Mr. Conway, the bottom of page six of the board's decision. It's clear from the uncontested facts that the base year was 2003. And Mr. Conway says that's flat out wrong. Why are you... Your position is it's absolutely correct. Yes, Your Honor. On what basis do you contend it's correct? Your Honor, it's correct because the stipulation that we identified, and it's really part of the heart of the issue in this case, or the mistake in this case, is it refers to the building was not complete, there were not all the improvements completed on the property, and it's impossible to assess the property until all of the... I mean, it's impossible to assess the building as completed until you have all of the improvements on the property. You can't... Well, that's true, but that's not a stipulation as to the year 2003, is it? No, Your Honor, it's a stipulation as to... And it's not... The stipulation between the D.C. Tax Assessor's Office, and this is important, it's a stipulation between the D.C. Tax Assessor's Office and parcel 49C, which the government was not aware of. But where is the uncontested basis, or the uncontested support for the conclusion that the base year is 2003? Is it the D.C. Tax Assessor's assessment of 2003? Well, I mean, that's part of it, and it's also they never contested that. And I think, you know, because this issue has never come up until now, I think if you look back at our proposed findings of PAC and their response, I don't think you'll see any dispute. And all throughout all the proceedings, you'll never see any dispute about whether or not there was a full assessment of the property at that time. At what time? As of, well, prior to 2003. Really? They didn't think there was a full assessment at least by 2000? No, Your Honor. There's no indication they never... Wait a minute. They're not arguing there was a full assessment by 2000? No, Your Honor. What they're saying is that the parties modified the agreement so that you take away this, the Kimbrell, take away what it says in Kimbrell, take away what the lease says in the original document, and they think that what happened was the parties decided to substitute that for 2000. Whatever 2000 might be, however you might interpret that, we'll just make it 2000 rather than the first year of full assessment. So they never contended that 2000 was the first year of full assessment. They just said, well, that's not what it is anymore because we modified the lease. But it was the government that said 2000 was the first year of full assessment, wasn't it? That, Your Honor, this was based on their... But wait a minute. Answer the question. Wasn't it the government who said to them, well, 2000 is the year, the first year. Isn't that what you wrote to them? They asked for confirmation whether or not that was... And they said, sure. Yes. And they said, sure. Yes. So they have agreed with you that at least by 2000 there was a full assessment. You can't say that they've never addressed that issue because they clearly did in response to your letter saying, isn't it true that by 2000 we had a full assessment? Your Honor, if that's the case, then what you have is a mutual mistake because whether or not that's what the letter of exchange represents, they have never before the Board or before this Court up until today argued that under Kimbrell, the year 1998, it would be the full assessment taking away the exchange of correspondence and the SLAs. I do want to go to the SLAs too because, as you see, you have the exchange of correspondence where the information that Parcel 49C is required to provide but did not provide, and the GSA goes out and tries to find this information out for itself but can't find what is at stake in this case, which is whether or not it's the full assessment. So they ask Parcel 49C for this information, and Parcel 49C says it concurs. Well, if they didn't know, that's a mutual mistake. I'm puzzled by the mutual mistake concept. Help me on that. If you read the restatement, the restatement talks about formation of the contract, mutual mistake at the making of the contract. I take it what you're saying is mutual mistake applies to a revised contract, which is what this letter of exchange involves. That's what the intent involves. You're arguing, the argument is that mutual mistake, well, you seem to think it was a mutual mistake also, don't you? Our argument is, first, that there was never an intent to modify the lease. Therefore, the law as stated in Kimbrell still applies. It's the year 2003. There's never been a dispute under Kimbrell. You know, you keep talking about the law under Kimbrell. What Kimbrell says is, in the present case, it is undisputed that the 1988 tax assessment was based upon the value of the land exclusive of the improvements, principally the building that were contemplated under the lease. Sounds familiar, doesn't it? The improvements under the lease were not included in the tax assessment until the 1989 tax year the following year. One of the questions in this case has to be, were the improvements included in the 1998 tax year assessment that was stipulated to by the government, by the DC government? We don't know that from the record. Your Honor, I think we do know because, with all due respect, first of all, that's what the board found. There's never been a dispute prior to today by opposing counsel that under Kimbrell that would be the first year full assessment. And if you look at the stipulation, the stipulation identifies that the building was not complete at the time of the stipulated assessment. It doesn't need to be complete. Kimbrell doesn't say the building needs to be complete. Kimbrell says the improvements under the lease were not included in the tax assessment. That's what needs to be done. The building may or may not be complete. The question is, was the value of the improvements included in the 1998 tax assessment? When exactly was the 1998 tax assessment done? Can you tell me that? We know that it was done in advance. In advance of what? We know in advance of the stipulation. The stipulation was entered into in April of 1998. We know that they were done in advance. And what was in the stipulation in terms of the value of the building? They stipulate the value of the building. But it says the subject property is a new construction that will not be completed until approximately September. So it doesn't include the value of the improvements. The only point, counsel, is the summary judgment point, which our presiding judge keeps making the point about. This is summary judgment. If you could help me with some of these emails, like this one on 12-2, page 105. And you see the parties trying to get the correct tax assessment. We don't see them contesting whether there's a full assessment or not. We just see them trying to find the correct one. And there's even surprise here at Mr. Reed, the big change from 2002 to 2003. What is happening at this point? Are they trying to find the full assessment value? Yes, Your Honor. If you go back to the GSA's letter from May of 2007, and I think I would just like to quote it to the Court. On page 27, and this exchange of correspondence is crucial, it says, as indicated in Section 19, Tax Adjustment of the Above Leased, if no full tax assessment is made during the calendar year in which the government lease commences, the base year will be the first year of full assessment. Our records indicate that the first year of full assessment was the year 2000. Again, this was the issue. This was the mistake, but this is a mistake that they contributed to  GSA asks for it, and they don't provide it, and then in response, they say that they concur. And they also speak of this being pursuant to Section 19 of a lease. All of this, this exchange of correspondence is relative to acting pursuant to the lease. So all the SOAs in addition, these documents do not reflect an intention to modify the lease, but rather to act in conformity with the lease. Your Honor was asking about summary of judgment. Well, the Board found that this was the case, that the year 2003 was the first year of full assessment. One thing looking at appendix page 106, this is a letter from, or an email, a letter from the GSA. It looks like it says in the middle of the third paragraph, a good rule of thumb is that in the district, real estate taxes usually rule between 12 or 15 percent of the fully serviced rental rate. And that sounds like perhaps the increase in assessment was not due to the completion of improvements, but to increases in rent or something relating to occupancy. Your Honor, let me explain. And if that's the case, that doesn't at all come under the rule of. Your Honor, the basis for the year 2003 being the first year of full assessment is not these emails. But what these emails are is, what happened was the GSA, getting this information from Parcel 49C, had some concerns about whether or not the year 2000 was the first year of full assessment. And we think it's reasonable for them to rely upon their representation about what the base year is, since it's their tax information and they're required to provide it. But in these, the contracting officer, Robert Reed, who this is the two line, this is from Richard Kane, who's a senior appraiser. And basically, Mr. Reed went to Mr. Kane. He couldn't understand. Basically, he contacted Mr. Reed, the contracting officer. He had contacted the D.C. Tax Assessor's Office. And the D.C. Tax Assessor's Office couldn't explain the mistake. He asked, well, why did the taxes increase from $60 million to $166 million to the D.C. Tax Assessor's Office? And the D.C. Tax Assessor's Office didn't say, well, it's because of stipulated assessment. And so he turned to Mr. Kane and asked this question. What did they say? They gave him some information about income, about the income. They couldn't really reveal all the information. That sounds like rental increases. I'm sorry? Is that right? Well, I mean, I think there's no indication that there were rental increases during this time without the assessment. The assessment during this time, prior to 2003, stayed at $60 million. And so it's based on that 1998 stipulation. Now, if that's not the case, if there was something else, what we'd have is a case of mutual mistake. I would like to address one. Any more? I would like to address one. Final point. Yes, Your Honor. I would like to address one point, which is that parcel 49C contends that there was a secret plan hatched by the GSA to have this. They had a subjective intent. They were going to issue unilateral SLAs, which would merely reflect the tax escalation and not actually change the tax escalation. And then if they got later information that would contradict what they'd been provided and what parcel 49C said, they would change this. Well, this is not the case. It wasn't a secret plan. And actually, if you look back at the GSA's letter at the last paragraph, it refers to what will happen if information comes in that changes, which indicates that this is not an intent to modify the lease, that if information comes in and it's not the first year of full assessment, that they would thereafter change to revise accordingly. And I would just direct the Court's attention to that page 28. Thank you, Your Honor. Thank you, Mr. Dearburg. Mr. Conway, you have two minutes. Thank you, Your Honor. Several quick points. Number one, one of the chief errors in the Board's decision below is that they found that the year 2003 was the first year of full assessment. There's no factual basis in the record for that. We can test it below. We can test it here. We say in our briefs over and over there was no mistake. That's first. Secondly, the government says we somehow failed in our obligation to give the tax information to GSA because we didn't provide it in September after the letters were done. The government had that information in April and May before they wrote the letters. If the Board would look at Joint Appendix 90A, which is a definition of testimony of Mr. Reed, Mr. Reed indicates that he called the DA's office in April, end of April, beginning of May, because he knew the rate had jumped from $60 million to $106 million, and he wanted to know why. He called the DCS's office, and Mr. Reed had the tax information. He had the assessment information. He knew it all. What he didn't have was the internal stipulation. That was the DCS's office. He could have gotten that if he had gone down there. In fact, when Mr. Cain was put on the task in December of 2003, in a matter of a few days, he had that information. This is conscious disregard by GSA of the facts in the 153 and 154 of your statement. Finally, I think that's all that I have. The final point is, I think Judge Lynn has it correctly, which is that one needs to take a look at the rate that's the reason for the increase. Unfortunately, the Board jumped to the conclusion of 2003. There are no facts in the record to support that. There isn't one shred of evidence to support that conclusion. We believe that the amount of $60 million is indicated for 1998, 1999, 2000, and we believe if you look at the final point, look at the stipulation, which is JA114, you'll see a similar land and improvements, which is what the clause says. Could you just comment very briefly for me on the letter on page 115 of the appendix? This is the GSA letter? It's a letter from Robert Reed to your client. Yes, Your Honor. That seems to explain that the District of Columbia Real Estate Tax Assessment Office determined that the first year of full assessment was 2003. Does that clarify or shed any light on this? I don't think that's what that letter indicates, Your Honor. There was no discovery or final effect about this letter at all. I don't believe that's what the letter says. All right. Thank you, Mr. Conway.